**UNITED STATES,**

v.

**Jose MUYET, John Muyet, Pedro Nar-vaez, Frank Sosa and Antonio Feliciano, Defendants.**

**No. S3 95 Cr. 941 (PKL).**

United States District Court, S.D. New York.

Jan. 29, 1997.

Roy Kulcsar, Law Offices of Roy Kulcsar, New York City, for Jose Muyet.

Mitchell A. Golub, New York City, for John Muyet.

Robert L. Weinstein, New York City, for Pedro Narvaez.

Sanford M. Katz, New York City, for Frank Sosa.

Carole H. Hofstein, Freeman, Nooter & Ginsberg, New York City, for Antonio Feliciano.

Jay Holtmeier, Assistant United States Attorney, Mary Jo White, United States Attorney, Criminal Division, and Douglas B. Maynard, United States Attorney's Office, New York City, for the U.S.

### MEMORANDUM ORDER

LEISURE, District Judge:

The defendants are charged in connection with an alleged narcotics trafficking organization. The Government seeks to introduce a portion of former codefendant Julio Matias's plea allocution into evidence, arguing that it is admissible as a declaration against penal interest under Rule 804(b)(3) of the Federal Rules of Evidence. The defendants argue that although courts have permitted the introduction of plea allocutions in other cases, the allocution should be excluded in this case as unfairly prejudicial because Matias and his lawyer participated in this trial, before the jury, for weeks. For the reasons stated below, the Government may introduce a redacted version of the plea allocution.

## BACKGROUND

When this trial commenced on December 3, 1996, seven defendants were on trial. Those defendants were Jose Muyet, John Muyet, Pedro Narvaez, Frank Sosa, Antonio Feliciano, William Delvalle, and Julio Matias. From that day, until December 18, 1996, Julio Matias and his lawyer, Susan Wolfe, sat in the courtroom alongside Matias's codefendants and participated in this trial. On December 18, 1996, Matias pleaded guilty to conspiring to murder Angel Luis Rivera, Nelson Pacheco and Antonio Cruz, in violation of 18 U.S.C. § 1959(a)(5), and conspiring to murder Antonio Flores, in violation of 18 U.S.C. § 1959(a)(5). Matias faces a potential sentence of 20 years' imprisonment on these counts. Following Matias's plea allocution, Susan Wolfe, in the presence of Matias, advised the Court that if he were called as a witness at trial and questioned about charges in the indictment, he would invoke his Fifth Amendment privilege against self-incrimination. William Delvalle also pleaded guilty on December 18, 1996. When the trial resumed, the Court instructed the jury not to speculate as to why Matias and Delvalle were no longer on trial.

## DISCUSSION

### I.  RULE 804(b)(3)

■ Under Rule 804(b)(3) of the Federal Rules of Evidence, a statement is not excluded as hearsay if (1) the declarant is unavailable; and (2) the statement "at the time of its making ... so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed.R.Evid. 804(b)(3); see United States v. Bakhtiar, 994 F.2d 970, 977 (2d Cir.), cert. denied, 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993). The defendants concede that the Matias is unavailable. They could not successfully argue otherwise because a declarant, whose attorney represents that the declarant will assert his privilege against self-incrimination if called to testify, is unavailable for purposes of Rule 804(b)(3). See United States v. Williams, 927 F.2d 95, 99 (2d Cir.), cert. denied, 502 U.S. 911, 112 S.Ct. 307, 116

L.Ed.2d 250 (1991). Therefore, the only issues before the Court are whether the statements offered by the Government qualify as statements against penal interest, whether admission of the statements would violate the Confrontation Clause, and whether the probative value of the statements is substantially outweighed by the danger of unfair prejudice.

■ The Court of Appeals for the Second Circuit has indicated on more than one occasion that a guilty plea qualifies as a statement against penal interest. See United States v. Scopo, 861 F.2d 339, 348 (2d Cir.1988), cert. denied, 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 186 (1989); Williams, 927 F.2d at 98; United States v. Winley, 638 F.2d 560, 562 (2d Cir.1981), cert. denied, 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982). In Scopo, the Second Circuit explained that:

> In general a plea of guilty is a statement against the penal interest of the pleader for the obvious reason that it exposes him to criminal liability. Likewise, so much of the allocution as states that that defendant committed or participated in the commission of a crime, thereby permitting the court to accept the plea, is normally against his interest.

Scopo, 861 F.2d at 348 (citations omitted). The Second Circuit has also observed that:

> It is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty in a federal court, particularly when, as here, the facts elicited in the allocution are buttressed by the testimony of other witnesses.

Williams, 927 F.2d at 98 (quoting Winley, 638 F.2d at 562). Matias's plea allocution clearly contains statements against his penal interest. He pleaded guilty to two counts of committing a violent act in aid of racketeering. The plea exposed him to a potential sentence of 20 years' imprisonment. Furthermore, as was the case in Winley, the statements contained in the allocution are corroborated by the testimony of other witnesses. Although corroboration is not required under Rule 804(b)(3) when a state-

ment is offered to inculpate a defendant, *see United States v. Bahadar*, 954 F.2d 821, 828–29 (2d Cir.), *cert. denied*, 506 U.S. 850, 113 S.Ct. 149, 121 L.Ed.2d 101 (1992), it serves as an additional indicium of reliability.

■ Nevertheless, the mere fact that Matias's allocution contains some statements against his penal interest does not render the entire allocution admissible. *See Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). In *Williamson*, the Court held that Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at 600–01, 114 S.Ct. at 2435. Rule 804(b)(3) is based on the premise that reasonable people do not tend to make statements that will expose them to criminal liability. *See id.* at 599, 114 S.Ct. at 2435. However, the "fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." *Id.* at 599, 114 S.Ct. at 2435. Therefore, portions of a plea allocution that do not tend to expose a defendant to criminal liability are not admissible as declarations against penal interest. *Cf. Scopo*, 861 F.2d at 348 ("If, however, a pleading defendant had an agreement with the government or with the court that he would not be punished for the crimes to which he allocuted, then that allocution would not subject him to criminal liability and would not constitute a statement against his penal interest within the meaning of Rule 804(b)(3).").

Matias pleaded guilty to violating 18 U.S.C. § 1959(a)(5). The elements of a § 1959(a) offense are: "(1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in doing so was to maintain or increase his position in the enterprise." *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir.1992), *cert. denied*, 510 U.S. 856, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). The statements that tend to establish the elements of this offense qualify as statements against Matias's penal interest.

Having carefully reviewed the portion of the allocution offered by the Government, the Court concludes that the statements on page 26, lines 13 through 19,[1] and on page 27, lines 17 through 20,[2] do not qualify as statements against penal interest because they do not tend to subject Matias to criminal liability. The redacted allocution reads as follows:

A. Count Seven. In or March, 1992 I conspired with other people to murder three individuals in order to maintain my position in the enterprise that engaged in a pattern of activity, including violence and drug dealing.

With respect to Count Thirteen, on July of 1992, I conspired with other people to participate in the murder of Antonio Florez [sic]. In order to maintain my position in the enterprise I engaged in a pattern of activity including violence and drug dealing.

Q. Mr. Matias, so the record is clear on this, I'm not sure I heard you correctly when you said you engaged in these acts to do what, to maintain what?

A. My position.

Q. A position?

A. Yeah, in the enterprise.

Q. And this enterprise did what on a regular basis, what type of activity?

A. Violence and drug dealing. Violence and drug dealing.

Q. And that was the same enterprise for both conspiracies that you mentioned?

Govt.Ex. 715 at 26.

---

1. Those lines contain the following statements:
   Q. My understanding is at this point you have a statement that you want to read into the record?
   A. Yes, Sir.
   Q. Please do so.
   MS. WOLFE: Is it okay if he sits, your Honor?
   THE COURT: Yes, it is.

2. Those lines contain the following statements:
   Q. Where did this enterprise operate?
   A. In the Bronx.
   Q. What borough?
   A. In the Bronx.
   Govt.Ex. 715 at 27.

A. Yes, sir.

\* \* \* \* \* \*

Q. And over what period of time did you participate in this enterprise?

A. '92.

Q. During 1992?

A. From '91 to '92.

Q. At the time you engaged in the two conspiracies did you understand what it was that you were doing, that is, that you were engaged in an attempt to shoot or murder others?

A. Yes, sir.

MS. WOLFE: I wasn't sure of the prosecutor's questions. He understood that he was engaged in a conspiracy?

Q. To murder others?

A. Yes.

Govt.Ex. 715 at 26–28. This portion of the allocution fits squarely within the 804(b)(3) exception to the hearsay rule because each of these statements tends to establish an element or elements of a § 1959(a) offense.

## II. THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT

■ For reasons similar to those stated above, admission of the statements does not violate the Confrontation Clause of the Sixth Amendment. The Confrontation Clause permits the admission of a hearsay statement when the declarant is unavailable and the statement bears adequate indicia of reliability. *United States v. Sasso,* 59 F.3d 341, 348–49 (2d Cir.1995) (citing *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). The Court has already concluded that the declarant is unavailable because he has indicated, through counsel, that he will invoke his Fifth Amendment privilege against self-incrimination if he is called to testify. *See id.* at 349 ("The declarant's invocation of his Fifth Amendment privilege against self-incrimination constitutes unavailability."). The second prong of the *Roberts* test is satisfied when the statement falls within a firmly rooted exception to the hearsay rule or when the totality of the circumstances surrounding the statement provide such "particularized guarantees of trustworthiness that the court can conclude that ad-

versarial testing would add little to its reliability." *United States v. Matthews,* 20 F.3d 538, 545 (2d Cir.1994) (quoting *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990)) (internal quotation marks omitted).

The Second Circuit has not yet decided whether declarations against penal interest fall within a firmly rooted hearsay exception. *See Latine v. Mann,* 25 F.3d 1162, 1166 (2d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1319, 131 L.Ed.2d 200 (1995). However, this Court need not decide that issue here because the statements contained in the redacted allocution bear particularized guarantees of trustworthiness. The statements, which subjected Matias to the risk of a lengthy term in prison, are directly against his penal interest. The Court narrowly limited the scope of the allocution to statements that tend to establish the elements of a § 1959(a) offense. In addition, the statements are corroborated by the testimony of other witnesses. Finally, the declarant, who was ably represented by counsel, made the statements under oath before this Court.

## III. RULE 403

The statements in Matias's plea allocution are only relevant, for the purposes of this case, to whether the two alleged conspiracies and the alleged enterprise existed. They are not relevant to whether any of the remaining defendants were members of either alleged conspiracy or were associated with the alleged enterprise. *See Winley,* 638 F.2d at 561 (noting with apparent approval that Judge Edward Weinfeld accepted plea allocutions "to prove that a conspiracy existed, not to prove that defendant was a member of it.").

The defendants argue that the statements are unfairly prejudicial because the jury had ample opportunity to observe Matias and his lawyer cooperating with his codefendants and their lawyers. Thus, there is arguably a risk that the jury will associate the defendants with Matias and improperly consider his statements as evidence that the defendants were members of the alleged conspiracies

and the alleged enterprise mentioned in the allocution.

■ Rule 403 of the Federal Rules of Evidence instructs that relevant evidence "may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403 (emphasis added). All evidence that tends to incriminate a defendant is prejudicial, in the sense that it is harmful to his case, but Rule 403 only precludes the admission of evidence that is *unfairly* prejudicial. *See United States v. Gelzer,* 50 F.3d 1133, 1139 (2d Cir. 1995); *United States v. Jimenez,* 789 F.2d 167, 171 (2d Cir.1986). Unfair prejudice results when the evidence has "some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Sorrentino,* 72 F.3d 294, 297 (2d Cir.1995) (quoting *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980)) (internal quotation marks omitted); *see* Fed.R.Evid. 403 advisory committee's note (" 'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). "Because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.,* 914 F.2d 26, 31 (2d Cir.1990).

■ The statements have substantial probative value concerning three facts in issue—the existence of a racketeering enterprise, the existence of a conspiracy to murder Angel Luis Rivera, Nelson Pacheco and Antonio Cruz, and the existence of a conspiracy to murder Antonio Flores. Although there may be some risk that the jury will consider the evidence in an improper manner, that risk does not substantially outweigh the probative value of the evidence. None of the defendants is mentioned in the allocution. The Court has repeatedly instructed the jury that they are to consider the guilt or non-guilt of each defendant separately. The Court will

repeat this instruction when the allocution is accepted into evidence. The Court will take great care to instruct the jury regarding the proper use of the evidence. The Court proposes the following instruction, but will consider the suggestions of defense counsel:

> You may consider these statements as evidence of the activities of Julio Matias, also known as Jujo. You may consider these statements as evidence of: the existence of an enterprise; the existence of a conspiracy to murder Angel Luis Rivera, Nelson Pacheco, and Antonio Cruz; and the existence of a conspiracy to murder Antonio Flores, also known as "Tony."
>
> However, these statements are not evidence that any of the defendants now on trial were members of these alleged conspiracies, or associated with the alleged enterprise. In order to find that any defendant now on trial was a member of one or both of these alleged conspiracies or associated with the alleged enterprise, you must rely on other evidence. There is no evidence in these statements naming the defendants on trial.
>
> In other words, if you find that the alleged conspiracies or the alleged enterprise existed, then the participation of the defendants on trial here in that conspiracy or the enterprise would have to be proved entirely by other evidence. There is nothing in these statements that proves that one way or the other.

*Compare Williams,* 927 F.2d at 98 (quoting the instruction given by Chief Judge Thomas P. Griesa). The Court will also instruct the jury that they should weigh the statements with great caution. Jurors "are presumed to follow their instructions," *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987), and the Court has particular confidence in the ability of this jury. As a final precaution, the Court will order the Government to turn over all prior statements by Matias in order to ensure that defense counsel has an adequate opportunity to impeach him.[3]

---

3. The probative value of the evidence is not outweighed by the needless presentation of cumulative evidence either. Although other evidence corroborates the statements regarding the existence of the alleged conspiracies and the alleged enterprise, those issues are "not yet so firmly

## CONCLUSION

For the foregoing reasons, the Government's request is GRANTED. The redacted version of the plea allocution is admissible for the limited purposes of proving the existence of the alleged conspiracies and the alleged enterprise. The Government is HEREBY ORDERED to produce all prior statements made by Matias which relate to the subject matter of his plea allocution.

**SO ORDERED.**

established as to render this evidence surplusage." *United States v. Wong,* 40 F.3d 1347, 1378 (2d Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 190, 133 L.Ed.2d 127 (1995).