08-0524-cr(L), 08-2342-cr(CON)
United States v. Gonzalez

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of November, two thousand ten.

PRESENT: DENNIS JACOBS,
                              Chief Judge,
              REENA RAGGI,
                              Circuit Judge,
              JED S. RAKOFF,
                              District Judge.*

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

              Appellee,

              -v.-                                  08-0524-cr(L)
                                                    08-2342-cr(CON)

DAVID GONZALEZ, PEDRO GONZALEZ,

---

* The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

1

**Defendants-Appellants.**[**]

- - - - - - - - - - - - - - - - - - - - - - -X

**APPEARING FOR APPELLANT:**     Marc Fernich, New York, NY, for Defendant-Appellant Pedro Gonzales.

Edward D. Wilford, (Karloff Commissiong, on the brief), New York, NY, for Defendant-Appellant David Gonzales.

**APPEARING FOR APPELLEE:**     Steve C. Lee, Assistant United States Attorney (Daniel A. Braun, Assistant United States Attorney, on the brief), for Preet Bharara, United States Attorney for the Southern District of New York, United States Attorney's Office for the Southern District of New York, New York, NY.

Appeal from judgments of the United States District Court for the Southern District of New York (Preska, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgments of the district court be **AFFIRMED.**

Pedro Gonzales and David Gonzales appeal from judgments of conviction entered on May 6, 2008 and January 22, 2008 (respectively), following a three-week jury trial. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

[1] Pedro argues that the delay between his arrest in 2003 and the start of his trial in September 2007 was a violation of his speedy trial rights. He emphasizes the one-year delay between the first superseding indictment and the

---

[**] The Clerk of the Court is directed to amend the official caption to conform to the docket numbers listed above.

Department of Justice's decision not to seek the death penalty for his co-defendants.

The Speedy Trial Act "imposes a unitary time clock on all co-defendants joined for trial." United States v. Vasquez, 918 F.2d 329, 337 (2d Cir. 1990). The unitary clock begins with the running of the clock for the most recently added defendant. United States v. Gambino, 59 F.3d 353, 362 (2d Cir. 1995). Any "reasonable period of delay" excluded for one defendant is automatically excluded for all defendants; for a defendant to challenge the "reasonableness" of delay attributable to a co-defendant, he must first have moved for severance. Vasquez, 918 F.2d at 336-37; see 18 U.S.C. § 3161(h)(6). Pedro concedes that his attorney failed to make a written motion for severance during that time period, but he argues that speedy trial concerns raised on several occasions should be construed as an oral motion to sever.

Pedro's attorney clearly raised concerns about his client's speedy trial rights at an early date and mused tentatively about bringing a severance motion. However, his comments were always about the consequences of a potential motion, should he choose to make one. See, e.g., Pedro Gonzales Appendix ("PG App.") at 109 ("[T]he basis for a severance motion which *I will be* presenting to the Court . . .") (emphasis added); id. at 119 ("I *intend* to make a motion which would include as relief severance of this case. . . ." (emphasis added)). The statements by Pedro's counsel "cannot be measured by [their] unexpressed intention or wants" and "should be treated as nothing but what [they] actually [were]." See Johnson v. N.Y., New Haven & Hartford R.R., 344 U.S. 48, 51 (1952).

In any event, the delay was reasonable between the superseding indictment and the highly sensitive death penalty decision. Moreover, the case was complex, and additional time was necessary for discovery. Pedro consented to several of the exclusions, and it is "plausible to regard [a defendant's] active participation and acquiescence in such delays as itself a significant indication of their reasonableness." Vasquez, 918 F.2d at 337. Finally, many of the continuances were afforded (in part) to allow Pedro's counsel to research the formal motion for severance that was never made. See, e.g., PG App. at 83-84.

3

At oral argument, Pedro invited us to reconsider _Vasquez_, and hold that a severance motion is not required to challenge the reasonableness of delays attributable to a co-defendant.  We decline the invitation.  The making of the motion is important to give notice of a defendant's claim of speedy trial prejudice and to avoid gamesmanship in agreeing to delays that are later challenged.  _Vasquez_, 918 F.2d at 337.

The remainder of the time pre-trial was properly excluded from the speedy trial clock under, among other provisions, 18 U.S.C. § 3161(h)(1)(D) and § 3161(h)(7).  As to time excluded under (h)(7) to serve "the ends of justice," the record makes clear that the district court understood the consequences of the delays and conducted the required balancing under § 3161(h)(7)(B)(i)-(iv).  _See_ _United States v. Breen_, 243 F.3d 591, 597 (2d Cir. 2001).

Pedro's argument under the Sixth Amendment right to a speedy trial is also unavailing.  Of the four factors to be considered under _Barker v. Wingo_, 407 U.S. 514, 530 (1972), one favors Pedro (the length of the delay), while the others favor the government: none of the delays were from deliberate or bad faith efforts by the government; Pedro did not press his speedy trial rights, only objecting to a few of the exclusions; he made no showing of how the delay impaired his defense (he called no witnesses and presented no evidence at trial); and his argument that the delays bolstered the government's use of its cooperating witnesses is speculative and unconvincing.

**[2]**  Pedro and David argue that testimony about David's post-arrest statements was improperly redacted.  The argument comes down to the rule of completeness.  _See_ Fed. R. Evid. 106.  David made a post-arrest statement that Soto robbed drug dealers; the government used it to tie Soto's murder to the drug conspiracy; it is contended that the jury should also have heard David's statement that Pedro kept David out of the drug business to protect him.

The rule of completeness permits a defendant to introduce the remainder of a statement not otherwise admissible if it is "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion."  _United States v. Castro_, 813 F.2d 571, 576 (2d Cir. 1987).  We review the

4

district court's application of the rule of completeness for abuse of discretion.  Id.

The admitted portion of David's statement triggers none of these concerns.  Whether Soto was known to rob drug dealers is an entirely separate issue from whether Pedro sought to minimize David's role in the conspiracy to protect him; David's comments about each issue were elicited by separate questions of the investigator.  The completeness doctrine does not "require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages."  United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  David's self-serving exculpatory statement would be inadmissible hearsay even had he been tried alone; the rule of completeness is not a mechanism to bypass hearsay rules for any self-serving testimony.  It was within the district court's discretion to conclude that the admitted portion of David's statements did not distort the meaning of the full statement or exclude information that was substantially exculpatory.  See United States v. Benitez, 920 F.2d 1080, 1086-87 (2d Cir. 1990).

**[3]** Pedro contends the district court improperly denied his request for a jury charge about multiple conspiracies.  A criminal defendant is entitled to a jury instruction when there is "some foundation in the proof" for it.  United States v. Dove, 916 F.2d 41, 47 (2d Cir. 1990).  However, if there is a variance between the single conspiracy charged and multiple that have been proved at trial, we reverse only upon a showing of substantial prejudice.  United States v. Cambindo Valencia, 609 F.2d 603, 625 (2d Cir. 1979).

Although Pedro had several different primary accomplices during the life of the charged conspiracy, Pedro's presence was a constant throughout; changes in membership "do not necessarily convert a single conspiracy into multiple conspiracies, . . . *especially where the activity of a single person was 'central to the involvement of all.'*"  United States v. Eppolito, 543 F.3d 25, 48 (2d Cir. 2008) (emphasis added) (citation omitted); see also United States v. Vila, 599 F.2d 21, 24 (2d Cir. 1979) ("[A] single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations." (citation omitted)).

**[4]** The trial court admitted into evidence an IRS certification that Pedro failed to file tax returns.  Pedro

could not cross-examine the records-holder, and on that ground asserts a challenge under Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). Melendez-Diaz expanded the category of materials that cannot be introduced without affording an opportunity to cross-examine the preparer. Id. at 2532 (holding that affidavits reflecting forensic determination that substance was cocaine triggered Confrontation Clause rights). The government concedes that the admission of the certificate of nonexistence likely violated the Sixth Amendment right to confrontation. Government Brief at 75.

Pedro did not object to the admission of the records at trial, however. Unpreserved Confrontation Clause objections are subjected to plain error review. United States v. Dukagjini, 326 F.3d 45, 59 (2d Cir. 2002). The certifications (that the IRS had no record of Pedro filing tax returns from 1991-2003) suggested Pedro had no legitimate source of income, leading to an inference that he dealt drugs to buy his cars, residences, and businesses. Pedro's attorney, however, conceded at trial that Pedro was a drug dealer. PG App. at 831 ("He was a marijuana dealer, no question about that. He made money."). The IRS records were of minimal importance, and the other evidence supporting his conviction was substantial, including testimony by multiple cooperating co-conspirators, large quantities of drugs provided to an informant by one of Pedro's partners, a consensual recording of a meeting between a cooperating witness and one of Pedro's partners discussing a large drug deal, paperwork reflecting lavish purchases, and a video showing a hidden "trap" to carry drugs in one of his cars. Therefore, even if Pedro's Confrontation Clause rights were violated, the violations do not constitute plain error or warrant reversal.

[5] Pedro argues that his lawyer rendered constitutionally ineffective assistance in failing to contest a vehicle seizure that produced evidence used at trial. This Court addresses ineffective assistance claims on direct appeal when their resolution is "beyond any doubt." United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990). Ineffective assistance claims are governed by the two-part test from Strickland v. Washington, 466 U.S. 668, 687 (1984).

This claim does not withstand the Strickland requirement for a showing of prejudice. Id. The government introduced documents retrieved from the car, and a video of

a "drug trap" in the car was shown to the jury to bolster the credibility of cooperating witness Geraldo, who testified to the trap's existence.  The evidence from the car was not central to the government's case; if it had been suppressed, overwhelming evidence (discussed above) would nevertheless support the conviction.  The trial counsel's error, if any, was therefore not "so serious as to deprive the defendant of a fair trial," id., and accordingly we reject Pedro's ineffective assistance claim.

**[6]**  David argues there was an impermissible lowering of the burden of proof for his conviction for murder in relation to a drug conspiracy.  At bottom, the argument appears to be that the jury charge failed to require premeditation for the 18 U.S.C. § 924(j) count.  Murder under § 924(j)(1) requires proof of an "unlawful killing of a human being with malice aforethought."  See 18 U.S.C. § 1111(a) (defining murder, as referenced by § 924(j)(1)).  The district court explained that a subjective intent to kill was not required and that "[t]he requisite malice can be found when the assailant acts with awareness of a serious risk of death or serious bodily harm."  PG App. at 965.  This formulation is firmly supported by our case law.  See, e.g., United States v. Velazquez, 246 F.3d 204, 214 (2d Cir. 2001) ("[I]n the context of second-degree murder in federal law, the requisite malice can in some circumstances be found when the assailant acts with awareness of 'a serious risk of death or serious bodily harm.'" (emphasis and citation omitted)).  The district court therefore properly defined the standard for 18 U.S.C. § 924(j), and there was no lowering of the burden of proof.

**[7]**  David claims his Confrontation Clause and due process rights were violated where the trial court limited cross-examination of the cooperating co-conspirators involved in Soto's murder.  David sought to probe whether they pled guilty to the murder as principals or as aiders and abettors, and whether they understood the pleas they made.  For Confrontation Clause purposes, a trial judge has wide latitude to impose reasonable limits on cross-examination to avoid "harassment, prejudice, *confusion of the issues*, the witness' safety, or *interrogation that is repetitive or only marginally relevant*."  Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (emphasis added).  Such a decision to limit cross examination will be reversed only upon a showing of abuse of discretion.  United States v. Maldonado-Rivera, 922 F.2d 934, 956 (2d Cir. 1990).

7

David's questioning concerning the discussions the witness had with his lawyer concerning the plea agreement invaded the witness's attorney-client privilege. David further inquired as to whether the witness thought his prior acts constituted the crimes to which he pled. These questions sought to elicit a legal conclusion over a complicated statutory scheme. These lines of questioning were confusing, repetitive, and only marginally relevant; the district court acted well within its discretion to limit cross-examination.

**[8]** Among his challenges to the jury charge, David argues that it improperly formulated the "substantive connection" requirement of 21 U.S.C. § 848(e)(1)(a) and failed to require a finding that aiding and abetting liability requires membership in the drug conspiracy. We review jury charges that were objected to at trial <u>de novo</u>,[1] reversing only "where a charge either failed to inform the jury adequately of the law or misled the jury about the correct legal rule," <u>United States v. Ford</u>, 435 F.3d 204, 209-10 (2d Cir. 2006) (citation omitted), and where the error is not harmless. <u>United States v. Amuso</u>, 21 F.3d 1251, 1261 (2d Cir. 1994).

The jury charge adequately instructed the jury. David's complaint about the "substantive connection" formulation focuses on a passage in an aiding and abetting instruction that David takes out of context; and he omits any discussion about the district court's prior, more detailed formulation of the standard, <u>see</u> PG App. at 969-70, which adequately instructed the jury on the substantive connection requirement of 21 U.S.C. § 848(e)(1)(a). <u>See</u> <u>United States v. Desinor</u>, 525 F.3d 193, 202 (2d Cir. 2008).

David cites no supporting authority for his claim that aiding and abetting liability for § 848(e)(1)(a) requires membership in the drug conspiracy in order to establish a "substantive connection," and that the jury must make an explicit finding; the argument misconstrues the requirements of aiding and abetting liability under 18 U.S.C. § 2.

---

[1] David did not object to the charge on the ground that it failed to restate the need for a "substantive" connection between the murder and the charged conspiracy. We therefore review that aspect of the charge only for plain error. <u>See</u> <u>United States v. Bell</u>, 584 F.3d 478, 484 (2d Cir. 2009).

Moreover, any error was harmless because the jury found that he was a member of the drug conspiracy.

**[9]**  David challenges the district court's refusal to suppress incriminating post-arrest statements he made on the way to and at the precinct.  In reviewing a challenged suppression ruling, we review legal conclusions <u>de novo</u> and factual findings for clear error, in the light most favorable to the government.  <u>United States v. Ivezaj</u>, 568 F.3d 88, 96 (2d Cir. 2009).

The district court found that David received oral <u>Miranda</u> warnings on the way to the precinct and written <u>Miranda</u> warnings at the precinct; in so doing, it was entitled to credit the written <u>Miranda</u> sheet signed by David at the station and the testimony of the detective about the conversation in the car rather than David's affidavit to the contrary, which was factually inconsistent with documentary evidence.

The totality of the circumstances support the conclusion that David's waivers of his <u>Miranda</u> rights were voluntary: "the product of an essentially free and unconstrained choice by [their] maker."  <u>United States v. Bye</u>, 919 F.2d 6, 8-9 (2d Cir. 1990) (citation omitted).  David's statements in the car were prompted by a conversation he initiated to determine why he was being detained; in the station, David was read his rights one-by-one, initialed each one, took time to read the form, and signed it.

For these reasons, the district court did not err in denying David's motion to suppress.

**[10]** David claims that there was insufficient evidence to support his conviction for the narcotics conspiracy.  To succeed on a claim of insufficient evidence, a party has the "heavy burden" of showing that "no rational trier of fact, viewing the evidence in the light most favorable to the government, could have found him guilty beyond a reasonable doubt of the essential elements of the crimes charged." <u>United States v. Desena</u>, 287 F.3d 170, 176-77 (2d Cir. 2002).  We consider all evidence introduced at trial, even if it was improperly admitted.  <u>United States v. Cruz</u>, 363 F.3d 187, 197 (2d Cir. 2004).

There was sufficient evidence for a rational jury to have found David guilty of the narcotics conspiracy count, even if the evidence suggests that he did not play a major role.  Testimony by co-conspirators and his own inculpatory post-arrest statements establish he sold marijuana for Pedro, steered customers to co-conspirators, cleaned the apartment where marijuana was grown, delivered money or drugs to a known drug den, and participated in Soto's murder to protect Pedro's drug business.  The evidence did not need to cover the entire twelve-year period alleged in the indictment; without affirmative evidence of withdrawal, a person's participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators.  See United States v. Diaz, 176 F.3d 52, 98 (2d Cir. 1999).

**[11]** David contends the government failed to establish the elements of murder through the use of a firearm in relation to a drug conspiracy, in violation of 18 U.S.C. § 924(j).  To the extent he argues that the evidence does not establish his membership in the conspiracy, it is duplicative of his sufficiency of the evidence argument for the conspiracy count discussed above.  David also argues that he did not have the knowledge or intent to bring about the death of Soto.  However, testimony about David's confessions and from his co-conspirators suggests that David: knew Soto was in a drug-related dispute with Pedro; retrieved a firearm from his apartment; pursued the victim; gave the gun to a co-conspirator in the lobby where the victim was trapped; cocked the gun after it jammed; and received and hid the gun after the murder.  These facts are sufficient for a rational trier of fact to have found David had the requisite mental state for conviction under § 924(j), either as a principal, an aider or abettor, or through the Pinkerton charge.

We have considered the other arguments of David and Pedro and conclude that they lack merit.  For the foregoing reasons, we hereby **AFFIRM** the judgments of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

10